1

2

3

4

5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7

8   UNITED STATES OF AMERICA,                 )
                                              )
9                         Plaintiff,          )   Case No.  2:10-cr-578-PMP-GWF
                                              )
10  vs.                                       )   **FINDINGS &**
                                              )   **RECOMMENDATIONS**
11                                            )
    LINDA LIVOLSI, aka LINDA GROGG and        )   **RE: Motion to Dismiss (#151)**
12  WILLIAM LIVOLSI, JR.                      )
                                              )
13                        Defendants.         )
                                              )
    _____   )

14

15       This matter is before the Court on Defendant William Livolsi, Jr.'s Motion to Dismiss for

16  Vindictive/Retaliatory Prosecution, Evidentiary Hearing and Oral Argument Requested (#151), filed

17  on July 25, 2014.  The Government filed its Response (#157) on July 29, 2014, and Defendant filed

    his Reply (#163) on August 20, 2014.  The Court conducted a hearing in this matter on September 3,

18  2014.

19

**BACKGROUND**

20

21       Defendant Linda Livolsi was originally indicted in this case on December 1, 2010 for

22  conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and wire fraud in violation of 18

23  U.S.C. § 1343.  *Indictment (#1).*  Count One of the indictment alleged that Ms. Livolsi falsely and

    fraudulently induced people to invest with her by representing that she was an investment adviser to

24  a hedge fund that would invest in publicly traded companies, and that her hedge fund had a track

25  record of outstanding returns, when she then and there well knew that she would not invest their

26  money in a hedge fund.  ¶ 4.  The indictment alleged that instead of investing the investors' money in

27  a hedge fund, Ms. Livolsi and her co-conspirators used the money to pay for personal purchases and

28  expenses.  ¶ 7.  Count Two of the indictment alleged that Linda Livolsi committed wire fraud by

1    obtaining $5,015,000.00 from an individual identified as "E. B." by means of materially false and

2    fraudulent pretenses, representations and promises.   ¶¶ 11, 12.  Defendant Linda Livolsi made her

3    initial court appearance on the indictment on January 20, 2011 at which time she plead not guilty.

4    Trial of this case has been continued at various times due to Mrs. Livolsi's illnesses which prevented

5    her from assisting in the preparation of her defense.

6         On January 7, 2014, the Government filed a superceding indictment which joined Linda

7    Livolsi's husband, William Livolsi, Jr., as a co-defendant on Counts One and Two charging

8    conspiracy to commit wire fraud and wire fraud.  *Superceding Indictment (#110).*  The superceding

9    indictment also alleges six additional counts against Linda Livolsi for filing false and fraudulent tax

10   returns and failure to file tax return.  *Id.*, Counts 3-8.

11        Mr. Livolsi argues that the indictment against him should be dismissed based the

12   Government's vindictive and retaliatory prosecution of him.  In support of this assertion, Mr. Livolsi

13   states that during its three year prosecution of Mrs. Livolsi, the Government became frustrated with

14   its inability to obtain documents from her pursuant to a subpoena duces tecum, or to get her to plead

15   guilty, or to get the case to trial.   Mr. Livolsi also asserts that "on May 7, 2013, two IRS agents

16   approached him and wanted to interview him about 'RGM Enterprises', an entity which figured in

17   the alleged fraud scheme charged in 2010.  (Exhibit 1).  Mr. Livolsi, according to the memorandum

18   of interview, stated that RGM 'was his wife's company', and that he did not want to answer any

19   questions 'without an attorney present.'"  *Reply (#163), pg. 2.*   Mr. Livolsi argues that these

20   circumstances, combined with the 3 year delay in bringing charges against him, creates a

21   presumption of vindictive or retaliatory prosecution which the Government must rebut.  *Id.*

**DISCUSSION**

23        "To establish a prima facie case of prosecutorial vindictiveness, a defendant must show either

24   direct evidence of actual vindictiveness or facts that warrant an appearance of such."  *United States*

25   *v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1991), quoting *United States v. Sinigaglio*, 942 F.2d 581,

26   584 (9th Cir. 1991) (internal quotation marks omitted).  "Evidence indicating a realistic or

27   reasonable likelihood of vindictiveness may give rise to a presumption of vindictiveness on the

28   government's part."  *Id.*, quoting *United States v. Garza-Juarez*, 992 F.2d 896, 906 (9th Cir. 1993)

1   (internal quotation marks omitted).  "Once a presumption of vindictiveness has arisen, the burden

2   shifts to the prosecution to show that independent reasons or intervening circumstances dispel the

3   appearance of vindictiveness and justify its decisions."  *Id.*, quoting *United States v. Hooton*, 662

4   F.2d 628, 634 (9th Cir. 1981), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed2d 873 (1982)

5   (internal quotation marks omitted).  *See also United States v. Kent*, 649 F.3d 906, 912-13 (9th Cir.

6   2011).

7        In *United States v. Kent*, the court expounded on the deference that courts should give to the

8   prosecutor's pre-trial charging decisions:

9           For good reasons, the Supreme Court has urged deference to pretrial
10          charging decisions.  "In the course of preparing a case for trial, the
            prosecutor may uncover additional information that suggests a basis for
            further prosecution or he simply may come to realize that information
11          possessed by the State has a broader significance.  At [the pretrial] stage
            ..., the prosecutor's assessment of the proper extent of prosecution may
12          not have crystalized." *Goodwin,* 457 U.S. at 381, 102 S.Ct. 2485.  Also,
            in the plea negotiation context, the prosecutor's latitude to threaten
13          harsher charges to secure a plea agreement advances the interest in
            avoiding trial shared by the prosecutor, defendant, and public.
14          *Bordenkircher,* 434 U.S. at 363–64, 98 S.Ct. 663.  Finally, prompting
            prosecutors to file the harshest possible charges at the outset "would
15          [cause] prejudic[e] to defendants, for an accused 'would bargain against
            a greater charge, face the likelihood of increased bail, and run the risk that
16          the court would be less inclined to accept a bargained plea.'" *Goodwin,*
            457 U.S. at 378 n. 10, 102 S.Ct. 2485 (quoting *Bordenkircher,* 434 U.S.
17          at 368, 98 S.Ct. 663 (Blackmun, J., dissenting)).  Allowing prosecutors
            the leeway at first to withhold more severe charges also spares defendants
18          damage to their reputation that could result from the piling on of charges.
            *Id.*  For these reasons, the prosecutor's "initial [charging] decision should
19          not freeze [his or her] future conduct." *Goodwin,* 457 U.S. at 382, 102
            S.Ct. 2485.

20

21          Accordingly, in the context of pretrial plea negotiations, "vindictiveness
            will not be presumed simply from the fact that a more severe charge
            followed on, or even resulted from, the defendant's exercise of a right."
22          *Gamez–Orduno,* 235 F.3d at 462. Kent argues that he is entitled to a
            presumption of vindictiveness on the ground that the prosecution's
23          decision to file the § 851 information immediately followed, and was
            causally related to, his choice to enter an unconditional guilty plea.
24          *Gamez–Orduno* directly forecloses that argument.

25       649 F.3d at 913.

26       In *United States v. Lopez*, 474 F.3d 1208, 1212 (9th Cir. 2007), the court also stated "a

27  prosecutor, and presumably field officers too, may threaten a defendant with prosecution during an

28  interview or plea negotiations, and if that defendant chooses not to cooperate or plead guilty, the

1    prosecutor is free to initiate a prosecution." *Jeffers v. Lewis*, 38 F.3d 411, 418 (9th Cir. 1994) also

2    states that the prosecutorial practice of threatening a defendant with increased charges if he does not

3    plead guilty and following through on that threat if the defendant insists on his right to trial, does not

4    create a presumption of vindictive prosecution.

5          In this case, Defendant has not produced any direct evidence of vindictiveness or retaliation

6    against him by the Government.  Defendant's assertion that the Government sought and obtained his

7    indictment because it was frustrated with the inability to obtain subpoenaed documents from Co-

8    Defendant Linda Livolsi or the delays encountered in bringing this case to trial, does not provide

9    objective facts sufficient to raise a presumption of vindictiveness by the Government in obtaining

10   Mr. Livolsi's indictment.  Nor does the fact that Defendant declined to participate in an interview

11   with the Government's agents prior to his indictment give rise to such a presumption.  In contrast to

12   *Lopez*, Defendant does not even contend that the IRS agents or the prosecutor made any threats of

13   prosecution if he declined to speak with them.

14         Although the Court finds no grounds for a presumption of vindictive prosecution, the

15   Government explains that the decision to indict Mr. Livolsi arose after new counsel for the

16   Government, Mr. Damm, was added to the case and reassessed the evidence and the charges in the

17   indictment.  Counsel for the Government represents that based on that reassessment, he made the

18   decision to seek additional charges against Mrs. Livolsi and to seek Mr. Livolsi's indictment.

### CONCLUSION

20         Defendant William Livolsi, Jr. has not presented objective facts or circumstances indicating a

21   realistic or reasonable likelihood of vindictiveness to give rise to a presumption that the Government

22   sought his indictment for a vindictiveness or retaliatory purpose.  Accordingly,

### RECOMMENDATION

24         **IT IS RECOMMENDED** that Defendant William Livolsi, Jr.'s Motion to Dismiss for

25   Vindictive/Retaliatory Prosecution, Evidentiary Hearing and Oral Argument Requested (#151) be

26   **denied**.

27   . . .

28   . . .

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 17th day of September, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge